UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MAYA CHAKRABORTY,

                    Plaintiff,

          v.                                            **DECISION AND ORDER**
                                                           10-CV-516S
TOWN OF AMHERST, NEW YORK,

                    Defendant.

## I. INTRODUCTION

In this action Plaintiff Maya Chakraborty brings suit against Defendant, the Town of Amherst ("Amherst"), claiming violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634.  Plaintiff's claims arise out of her termination from the position of part-time Survey Assistant/Case Manager with Amherst's Senior Services, and Defendant's subsequent failure to rehire her for various positions that became available thereafter.  Presently before this Court is Defendant's Motion for Summary Judgment.[1]  For the reasons discussed below, Defendant's motion is granted.

---

[1]In support of its Motion for Summary Judgment, Defendant filed a Statement of Facts, with Exhibits; a Memorandum of Law; the Affidavit of Mary Ellen Walsh; the Affidavit of Robert McCarthy; a Reply Affidavit; and a Reply Memorandum.  (Docket Nos. 14, 15, 17, 18, 19, 25, 26.)
          In opposition to Defendant's Motion for Summary Judgment, Plaintiff filed a Memorandum of Law, included in which was a Statement of Facts.  (Docket No. 24.)

## II. BACKGROUND

### A.     Facts[2]

Plaintiff, Maya Chakraborty was employed with Defendant Amherst's Department of Senior Services from February 19, 2005 to November 2005, and again from April 2006 to early 2010.  (Def.'s Stmt. ¶¶ 2, 3, 4, 5, Docket No. 15.)  During her first eight month period, she worked as a part-time survey assistant/case manager.  (Def.'s Stmt. ¶ 1.)  After she was rehired, she worked as a youth activity leader on a part-time basis.  (Def.'s Stmt. ¶ 4.)  While employed as a survey assistant/case manager, she was informed of various complaints by Amherst residents who disliked her Indian accent and intended to cancel their visits to Amherst's outreach center should they be scheduled to meet with Plaintiff. (Pl.'s Stmt. ¶ 23, Docket No. 24.)  Amherst allegedly took no further action to protect Plaintiff from these complaints.  (Pl.'s Stmt. ¶ 25.)

Sometime in 2005, Amherst received grant-funding for a full-time case manager position.  (Def.'s Stmt. ¶ 3.)  As part of this funding, Amherst was required to terminate a part-time outreach worker position as of November 1, 2005.  (Id.)  Defendant terminated Plaintiff's position, but informed her that the position was being eliminated due to budget cuts.  (Pl.'s Stmt. ¶ 4.)  Additionally, Amherst's town records mistakenly stated that Plaintiff had resigned her position.  (Pl.'s Stmt. ¶ 5.)

Prior to her termination, Plaintiff expressed a desire to resume employment if and when funds became available, as well as a willingness to work at a full-time level.  (Pl.'s

---

[2]This Court has accepted facts included in Plaintiff's and Defendant's Statement of Facts to the extent that they have not controverted each other's statements. See Local Rule 56(a)(2) (statements of material fact that are not specifically controverted by the non-moving party are deemed admitted).

Stmt. ¶¶ 6, 7.)  Plaintiff was informed that she was not eligible for the new full-time position ("November 2005 position"), having not taken and passed the civil service examination required by New York State Civil Service Laws.  (Pl.'s Stmt. ¶ 8; Def.'s Stmt. ¶ 6.) Defendant allegedly discouraged Plaintiff from taking the examination by telling her that there was a five-year waiting list, and that applicants higher up on the list would be given first priority.  (Pl.'s Stmt. ¶¶ 9, 10.)  The position was ultimately filled by a younger Caucasian applicant who had passed the civil service examination.  (Pl.'s Stmt. ¶ 11; Def.'s Stmt. ¶ 6.)

In January 2007, a second full-time case manager position was created ("January 2007 position").  This position was also filled by a Caucasian applicant, though it is disputed whether this applicant had passed the civil service examination.  (Pl.'s Stmt. ¶ 12.)

In October 2007, one of the two case manager positions became vacant ("October 2007 position").  (Def.'s Stmt. ¶ 8.)  Although, as before, this position required a person who had passed the civil service examination, no valid civil service list existed from which to fill the position.  (Id.)  Plaintiff applied for the position, but was not hired.  (Pl.'s Stmt. ¶ 17.) Instead, Judy Kwarta, another Caucasian employee in her early 30's was provisionally hired for the position.  (Id.; Def.'s Stmt. ¶ 9).  Ms. Kwarta had been an Amherst employee since 2001 and was advised that she would have to take and pass the civil service examination when it was next offered.  (Def.'s Stmt. ¶ 9.)

At the end of February 2008, a part-time survey assistant and case manager position became vacant ("February 2008 position").  (Pl.'s Stmt. ¶ 19.)  Although Plaintiff was given an interview, Amherst ultimately decided not to hire Plaintiff for the position. (Pl.'s Stmt. ¶ 20.)  The position was instead filled by a younger Caucasian employee who

3

held a Masters in Social Work.  (Pl.'s Stmt. ¶ 21; Walsh Aff. ¶ 13, Docket No. 18.)

## B.    Procedural History

Plaintiff commenced this action on June 21, 2010 by filing a complaint in the United States District Court for the Western District of New York.  (Docket No. 1.)  Defendant filed an Answer on July 12, 2010 (Docket No. 4) and the case was referred to the Honorable Judge Leslie G. Foschio, United States Magistrate Judge, for pre-trial non-dispositive matters (Docket No. 7).   Following discovery, Defendant filed a Motion for Summary Judgment on August 25, 2011.  The parties' briefs were deemed submitted as of October 24, 2011, at which time this Court took Defendant's motion under advisement without oral argument.

## III.  DISCUSSION

## A.    Summary Judgment Standard

Summary Judgment is warranted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).  A fact is material if it "might affect the outcome of the suit under governing law."  Anderson, 477 U.S. at 248.

The party seeking summary judgment must first demonstrate the absence of any disputed material facts.  The opposing party is then required to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial."  Celotex Corp.

v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008). To carry this burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), and it "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . or upon the mere allegations or denials of the adverse party's pleading," Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (internal quotation and citations omitted).

In assessing whether summary judgment is appropriate, the court's obligation is to view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970). The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

In the context of employment discrimination cases, the United States Court of Appeals for the Second Circuit has explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)).

Nonetheless, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."  Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).  Indeed, the Second Circuit has noted that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation."  Id.

**C.     Defendant's Motion for Summary Judgment**

Plaintiff's verified complaint does not enumerate any specific causes of action, but instead asserts jurisdiction pursuant to Title VII and the ADEA, before describing the facts of this case.  Although Plaintiff has not clarified which acts by Defendant form the nucleus of her claims, this Court can surmise that Plaintiff challenges her original termination, Defendant's remarks with regards to Plaintiff taking the civil service examination, and Defendant's failure to rehire her for the November 2005, January 2007, October 2007, or February 2008 positions.   As discussed below, none of these allegations survives Defendant's Motion for Summary Judgment.

It is well settled that where, as here, a plaintiff does not come forward with direct evidence of discrimination, her Title VII and ADEA claims are analyzed under the three-part burden-shifting framework first set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000) (Title VII); Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001) (ADEA).

Under this framework, the plaintiff must first establish a *prima facie* case of

discrimination by demonstrating that (1) she is a member of a protected class, (2) she is qualified for her position, (3) she suffered an "adverse employment action," and (4) the circumstances of the adverse action give rise to an inference of discrimination. Lawrence v. Nyack Emergency Physicians, P.C., 659 F. Supp. 2d 584, 593 (S.D.N.Y. 2009) (citations omitted).  An "adverse employment action" is a "materially adverse change" in the terms and conditions of an individual's employment. Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004); Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  It is "more disruptive than a mere inconvenience, and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Galabya, 202 F.3d at 640 (quotations, citations, and alterations omitted); see also Pimentel v. City of New York, No. 00 Civ. 326, 2002 U.S. Dist. LEXIS 8454, at *15 (S.D.N.Y. May 14, 2002) ("[W]here there is no loss of salary, benefits, seniority, tenure or promotion opportunities, there is no adverse employment action.").

   "The burden of establishing a *prima facie* case of disparate treatment is not onerous. Tex. Dep't of Comt'y Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981)).  Indeed, the Second Circuit has characterized the burden as "minimal." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000).  If the plaintiff meets this minimal burden, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. Burdine, 450 U.S. at 254.  If the defendant succeeds in making

this showing, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed.2d 407 (1993)).  The burden then returns to the plaintiff.

On Title VII claims, the plaintiff must come forward with "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the action." Weinstock, 224 F.3d at 42 (citation, quotation marks, and alteration omitted). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Id.  But, "[t]o get to the jury, 'it is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination.'"  Id. (quoting St. Mary's, 509 U.S. at 519).  With regard to ADEA claims, it is not enough to show that age was a contributing or motivating factor of the alleged adverse employment action; the plaintiff must be able to show that age was the "but-for" cause of the adverse action.  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 129 S. Ct. 2343, 2351-52, 174 L. Ed. 2d 119 (2009); Hogan v. J.P. Morgan Chase Bank, No. 09-3048-CV, 2010 U.S. App. LEXIS 24464, at *6 (2d Cir. Nov. 30, 2010) (summary order).

At the outset, this Court notes that, considering only Plaintiff's memorandum in opposition to Defendant's motion, Plaintiff has failed to establish so much as a *prima facie* case of discrimination.[3]   Although reiterating the allegations in her verified complaint,

---

[3]Plaintiff counsel's memorandum is actually entitled "*Defendant's* Response and Memorandum of Law in Opposition to *Plaintiff's* Motion for Summary Judgment."  (Docket No. 24) (emphasis added). Given that Plaintiff in this action has filed no motion for summary judgment, this Court assumes, for the sake of Plaintiff, that it is in fact meant to oppose Defendant's motion.

Plaintiff's memorandum does not so much as waive at the <u>McDonnell Douglas</u> framework. Stripped of its statement of facts and the case law describing the standard for a motion for summary judgment, Plaintiff's memorandum consists of a single paragraph asserting the existence of disputed facts as to whether Defendant discriminated against Plaintiff based on her age and national origin.

Viewed generously, and liberally expanding on Plaintiff counsel's bare-boned memorandum, this Court finds that at least some of the allegedly discriminatory acts make out a *prima facie* case.  As to all of them, Plaintiff has at least satisfied two of the *prima facie* requirements.  It is undisputed that she was a member of a protected class on the basis of her age and ethnicity, and that she suffered an adverse employment action when she was originally terminated from her part-time position in November 2005 and not rehired for any of the other positions for which she applied.  <u>See</u> <u>Leibowitz v. Cornell Univ.</u>, 584 F.3d 487, 501 (2d Cir. 2009) ("An employee seeking a renewal of an employment contract, just like a new application or a rehire after a layoff, suffers an adverse employment action when an employment opportunity is denied and is protected from discrimination in connection with such decisions under Title VII and the ADEA.").

Turning to Plaintiff's first claim, that she was terminated for discriminatory reasons, this Court finds that there is no evidence even suggesting discrimination.  As to her ADEA claim, Plaintiff nowhere contends that she was terminated because of her age.  On her Title VII claim, Plaintiff only asserts that there were complaints regarding her ethnicity, but there is no hint that Defendant acted on those complaints or was acting with a discriminatory intent in accepting a grant that would create a full-time case manager position at the expense of a part-time assistant position.  In fact, Plaintiff was rehired by

9

Defendant for another part-time position, that of youth activity leader, a few months later. There is, in short, no evidence to support an inference of discrimination on the part of Defendant in eliminating Plaintiff's position.

Similarly, although Plaintiff claims she was "stonewalled" when Defendant told her that there was a five year waiting list associated with the civil service examination and that those ahead on the list would be given first consideration, Plaintiff nowhere asserts, or presents anything more than her own deposition testimony, that these facts were false. Nor does she show how this prevented her from taking the civil service examination. Finally, even assuming that she was lied to, Plaintiff has presented nothing to show that Defendant gave her this information for discriminatory reasons. See Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir. 2001) (noting that even if "defendants exaggerated or lied about plaintiffs' behavior, the record does not support a finding that they did so to mask race discrimination"). Again, given the fact that Defendant did actually rehire Plaintiff for a part-time position, Plaintiff has not established the necessary inference of discrimination.

Because the November 2005, January 2007, October 2007, and February 2008 positions were filled by Caucasians who were younger in age than Plaintiff, she has sufficiently identified such an inference with respect to Defendant's decision not to hire her. See Earvin v. City Univ. of N.Y., No. 03 CV 9521(BSJ)(DCF), 2008 WL 5740359, at *4 (quoting Fisher v. Vasser Coll., 114 F.3d 1332, 1335 (2d Cir. 1997)) (filling of position by person not in the protected class sufficient to make out a *prima facie* case). However, as to the November 2005 and January 2007 positions, Plaintiff has not shown that she was qualified. Defendant has demonstrated, and Plaintiff has not disputed, that the full-time positions were only open to qualified applicants who had passed the civil service

10

examination. Plaintiff does not deny that she never passed the civil service examination. See Ruskowski v. Kaleida Health Sys., 422 Fed. Appx. 58 (2d Cir. 2011) (summary order) ("[A]bsent any evidence that Appellant was eligible to apply for the positions at issue, he has failed to establish a prima facie case that his age was the 'but for' cause of Appellee's failure to hire him.").[4]

As to the October 2007 position, because Defendant did hire an applicant who had, like Plaintiff, not passed the examination, Plaintiff can meet her burden as to this particular claim. But this only shifts the burden to Defendant to present a legitimate, non-discriminatory reason for its decision not to hire Plaintiff. See Burdine, 450 U.S. at 254. Here, Defendant has shown that it only hired someone who had not passed the examination because, at the time the position became available, there was no valid civil service list from which to fill the position. (Def.'s Stmt. ¶ 8.) Moreover, Defendant's decision to hire Ms. Kwarta, instead of Plaintiff, was based on the fact that Kwarta had worked for Defendant since 2001. (McCarthy Aff. ¶ 11, Docket No. 19.) Kwarta's six-year employment history prior to filling the position dwarfs Plaintiff's own, much shorter, two-year part-time record, and provides ample support for Defendant's decision. See Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997) (superior qualifications are legitimate reason for hiring one employee over another).

Similarly, although Defendant could have rehired Plaintiff when a part-time position opened up in February 2008, Defendant was entitled to hire an individual with the best

---

[4]Plaintiff disputes that the January 2007 position was filled by an individual who had passed the civil service examination. However, Defendant has presented the hiring records of the applicant which show that the individual had, in fact, been chosen from the civil service list, and Plaintiff has not challenged the authenticity of this evidence. (Ex. 8, Docket No. 14-2.)

qualifications.  This it did when it hired an applicant who had a Masters degree in Social Work, the preferred qualification for the part-time position of assistant surveyor/case manager.  (Walsh Aff. ¶¶ 4, 13.)[5]

Defendant having met its burden at the second stage of the <u>McDonnell Douglas</u> analysis, Plaintiff had the opportunity to show that Defendant's reasons were pretextual. But, as already discussed, Plaintiff wholly failed to make any effort at presenting a comprehensive argument, much less one that follows the standard under governing case law.  Although Plaintiff gamely asserts that statistical and other evidence will show that she was discriminated against, no such evidence is to be found anywhere in the record, and Plaintiff has not requested additional time to complete discovery.

Having failed to rebut Defendant's legitimate and non-discriminatory reasons, Plaintiff has failed its burden at the third stage of the <u>McDonnell Douglas</u> analysis.  Plaintiff has not shown that Defendant's given reasons were false or that age was the "but for" cause of any allegedly discriminatory acts.  Accordingly, Defendant's Motion for Summary Judgment will be granted.

## IV.  CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is granted.

---

[5]Plaintiff's own education was in the field of geography.  (Walsh Aff. ¶ 4.)

12

## V.  ORDERS

IT IS HEREBY ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED.

FURTHER, that the Clerk of the Court is direct to take the steps necessary to close this case.

SO ORDERED.


Dated:      January 28, 2012
            Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court